UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

PEDRO MENDOZA and
SANDY M. ARMIJO,

Case No. 16-10951 ta7

Debtors.

## **OPINION**

Debtors filed their chapter 7 bankruptcy case in 2015 but did not disclose a personal injury claim they owned. After the case was closed, Debtors received a $8,000 settlement from the insurance company. They moved to reopen their case so the claim could be listed, and the $8,000 "exempted." The case trustee objected to the exemption. The Court held a final hearing on the objection on November 16, 2017. For the reasons set forth below, the Court will sustain the objection.

I. FACTS

The court finds the following facts:[1]

On August 13, 2014, Sandy Armijo was injured when Dawn Davis drove her 2011 Ford Focus into the back of Armijo's 2008 Chevrolet Suburban. Armijo was stopped at a stoplight; the accident was not her fault. Davis, who was at fault, was insured by State Farm Mutual Automobile Insurance Company.

---

[1] In making these findings, the Court took judicial notice of the docket. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir.1979) (holding that a court may, sua sponte, take judicial notice of its docket); *In re Mailman Steam Carpet Cleaning Corp.*, 196 F.3d 1, 8 (1st Cir.1999) (citing Fed.R.Evid. 201 and concluding that "[t]he bankruptcy court appropriately took judicial notice of its own docket"); *In re Quade*, 496 B.R. 520, 524 (Bankr.N.D.Ill.2013), affirmed, 498 B.R. 852 (N.D. Ill. 2013) (a "bankruptcy court [is authorized] ... to take judicial notice of its own docket").

Armijo was injured in the accident. She started a series of chiropractic treatments on September 17, 2014. Her doctor was Brad Fackrell, D.C., of Straight Chiropractic in Rio Rancho, New Mexico. Before starting treatments, Armijo filled out an "Automobile Accident Questionnaire" that asked for her insurance, the other driver's insurance, and if she would retain an attorney.

Armijo received a total of 95 treatments from Dr. Fackrell between September 17, 2014 and June 22, 2017. 14 of the treatments were given post-petition. Armijo paid for 45 of the treatments herself. One treatment, performed on April 25, 2016, occurred less than one month before the creditors' meeting in this case.

Dr. Fackrell's case history notes, which are extensive, include the following excerpts:[2]

| Date | Notes |
| --- | --- |
| September 17, 2014 | Following the accident the patient began to experience constant pain in their neck, and right shoulder. Patient has also begun getting long lasting, re-occurring headaches that last for 3-4 days, and experienced numbness in their toes when sitting. Patient had no complaints in these areas prior to the accident. |
| November 3, 2014 | Patient presented for chiropractic care today with complaints of headaches, neck pain, mid back pain, low back pain, sleeping problems, and irritability. |
| February 19, 2015 | Patient presented for chiropractic care today with complaints of neck pain, lower back pain, and irritability. |
| February 25, 2015 | Patient states that they are noticing an improvement in lower back pain, and headaches. |
| March 24, 2015 | Patient state that they are not experiencing any major problems and feeling good. |
| March 25, 2015 | The patient understands that we are closing out the personal injury case and that this follow up care will be paid out of pocket. This should be considered in the monetary settlement with the |

---

[2] The Court did not correct any grammar or punctuation errors in the quoted excerpts.

| | patient. The estimated expenses for the patient for 9 months of follow up care will be estimated about $3,705 |
|---|---|

The total amount charged by Dr. Fackrell was $8,599.97.

Armijo's Chevrolet Suburban was damaged in the accident. On October 30, 2014, State Farm sent Armijo a check for $943.08, which was the cost to repair the Suburban.[3]

Debtors filed this chapter 7 case on April 20, 2016. Philip Montoya was appointed the chapter 7 trustee. Debtors' bankruptcy schedules, filed April 20, 2016, make no mention of the accident, Dr. Fackrell's unpaid bills, or any claim against Davis.[4] Schedule B requires that the debtors list:

> 33. Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment
> *Examples: accidents, employment disputes, insurance claims, or rights to sue*.

Montoya examined the Debtors at a § 341 meeting held May 23, 2016. During the examination, Montoya asked Debtors: "Do either of you have any reason to sue someone else?" Both answered "No." Montoya continued: "An example would be a car accident where you were injured, or any reason at all?" Again, both Debtors answered "No."

Montoya filed a report of no distribution on May 25, 2016. Shortly thereafter (perhaps May 31 or thereabouts), Dr. Fackrell contacted Armijo about his unpaid bills for the treatments he gave her after the car accident her March 25, 2015 "close out" date. On June 1, 2015, he also sent State Farm a $6,250.71 bill for those services.

On July 5, 2016, State Farm sent a letter to Armijo. The body of the letter reads:

---

[3] In contrast, the cost to repair Ms. Davis' Ford Focus was $4,583.42.
[4] Nothing in the record suggests that Armijo disclosed the accident to her bankruptcy counsel before October or November 2016.

> RE: Claim Number: 31-508W-402
> Date of Loss: August 13, 2014
> Our Insured: Dawn Davis
>
> Dear Sandy Armijo:
>
> Please contact our office to discuss the settlement of your injury claim. Thank you.
>
> Michael Woodrull
> Claim Representative
> (800) 324-0704 Ext. 68
> Fax: (888) 759-9032
> State Farm Mutual Automobile Insurance Company

The letter did not prompt Armijo to contact Montoya or her bankruptcy counsel.

The Court entered its discharge order and closed the case on July 25, 2016. On September 6, 2016, State Farm sent Armijo another letter, identical to the July 5, 2016, letter.

On October 14, 2016, State Farm sent Armijo a letter, enclosing a release and an affidavit for her to sign. She signed the documents on October 18, 2016. In the affidavit Armijo swore that she was "no longer . . . under the care of a person licensed to practice the healing arts."[5] The documents memorialize a settlement of all claims, including Dr. Fackrell's $6,250.71 bill, for $14,250.71.

State Farm paid Armijo $8,000 on October 25, 2016, and paid Straight Chiropractic $6,250.71 on October 26, 2016. Armijo deposited the money in her bank account.

On November 22, 2016, State Farm sent a letter to Armijo's bankruptcy counsel, informing him of the settlement. The record does not indicate how State Farm obtained the address, nor the purpose of the letter.

On April 3, 2017, Debtors moved to reopen their bankruptcy case to schedule and exempt the claim against Davis. The Court granted the motion to reopen. On April 12, 2017, Debtors filed

---

[5] That averment seems inconsistent with Dr. Fackrell's follow up treatments, which continued for eight months after she signed the affidavit.

amended schedules B and C. Amended schedule B states, in response to the requirement to disclose claims against third parties:

> $14,250.71 recovery for accident 8/13/14 caused by Dawn Davis/ State Farm Insurance; subject to chiropractor lien of $6250.71 Net to Sandy Armijo $8000.00 on 10/14/16

Amended schedule C exempts the claim under 11 U.S.C. § 522(d)(11)(D).

Montoya timely objected to the amended exemption. The Court held a final hearing in the contested matter on November 16, 2017.

## II. DISCUSSION

A. <u>May the Debtors Amend Schedule C After Reopening Their Case</u>?

"When seeking the protection of a bankruptcy court, a debtor has the duty to schedule all assets and liabilities, disclose income and expenses, make disclosures regarding the debtor's financial affairs, and claim any exemptions." *In re Dollman*, 2017 WL 4404242, at *2 (Bankr. D.N.M.), citing 11 U.S.C. § 521(a).

Fed. R. Bankr. Pro.[6] 1009(a) provides:

> A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed. The debtor shall give notice of the amendment to the trustee and to any entity affected thereby. On motion of a party in interest, after notice and a hearing, the court may order any voluntary petition, list, schedule, or statement to be amended and the clerk shall give notice of the amendment to entities designated by the court.

It is not clear from the first sentence of Rule 1009(a) whether debtors may amend their schedules in reopened cases. Courts have taken three approaches to the issue.

One court held that the language of Rule 1009(a) prohibits amendments in reopened cases. *See In re Bartlett*, 326 B.R. 436, 439 (Bankr. N.D. Ind. 2005) ("If the drafters had wanted to allow

---

[6] Herein, a "Rule."

amendments 'at any time,' 'at any time the case is open,' or 'unless the case is closed,' they would have said so. Instead, they chose 'at any time before the case is closed.'"). *See also In re Clear*, 1992 WL 1359570, at *2 (Bankr. N.D. Ind. 1992) (same); *In re Coverstone*, 2006 WL 2136032 (Bankr. N.D. Ind. 2006) (same). This view seems unduly restrictive. While the "before the case is closed" clause should be given effect, it seems more reasonable to interpret the first sentence of Rule 1009(a) as allowing debtors to amend "as a matter of course" only until the case is closed, rather than prohibiting all amendments in a reopened case.

A second view is that the first sentence of Rule 1009(a) applies equally in open and reopened cases, so a debtor's right to amend, permissive in the first instance, is just as permissive in a reopened case. *See Goswami v. MTC Distrib. (In re Goswami)*, 304 B.R. 386, 393 (9th Cir. BAP 2003) (for filing amendments, there is no difference between an open case and a reopened case, *citing Towers v. Boyd (In re Boyd)*, 243 B.R. 756, 766 (N.D Cal. 2000)); *In re Mathis*, 2007 WL 954756, at *1 (Bankr. E.D. Tenn. 2007) (following *Goswami*). This interpretation ignores the "before the case is closed" language (i.e., the result would be the same if the language were deleted), and therefore is unsatisfactory if a reasonable interpretation is available that gives effect to the language.

The third view, which this Court adopted in *In re Smith*, 2014 WL 7358808, at *4 (Bankr. D. N.M),[7] is that a debtor's ability to amend as a matter of right ends at case closure, but that a court may allow an amendment in a reopened case if the debtor can show excusable neglect. *See Moretti v. Bergeron (In re Moretti)*, 260 B.R. 602, 608 (1st Cir. BAP 2001) (debtor's request to amend schedules in reopened cases is governed by Rule 9006(b)(1), rather than Rule 1009(a), so the debtor must show that her failure to amend before case closure was due to excusable neglect).

---

[7] *See also In re Dollman*, (Judge Robert H. Jacobvitz).

*See also In re Schmidtke*, 513 B.R. 579, 585 (Bankr. D. Colo. 2014) (stating in dicta that the court preferred this interpretation of Rule 1009(a)); *In re Poulette*, 493 B.R. 729, 733-34 (Bankr. D. Md. 2013) (adopting this view); *In re Wilmoth*, 412 B.R. 791, 796-97 (Bankr. E.D. Va. 2009) (same). For the reasons set out in *Smith*, the Court believes that this third, middle ground approach best harmonizes the Code and Rules.

Rule 9006(b)(1) refers to a "specified period."[8] Here, the "specified period" is the case closing date of July 25, 2016. *See* Rule 1009(a). Debtors filed their amended Schedule C nine months later. The late filing must be disallowed unless Debtors can show excusable neglect.

B.      Excusable Neglect.

The Court makes a two-part inquiry to determine whether excusable neglect exists. *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993). First, the Court must examine whether Debtors' failure to take action timely was the result of neglect. *Id*. at 388. If so, the Court must decide whether the neglect was excusable. *Id*. at 394-95. The latter determination "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id*. at 395. Factors to consider include: "[1] the danger of prejudice to the [nonmoving party], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *Biodiversity Conservation Alliance v. Bureau of Land Management*, 438 F. App'x. 669, at *2 (10th Cir. 2011) (*citing Pioneer*). These factors do not necessarily carry equal weight; the reason for the delay, and in particular whether

---

[8] Rule 9006(b)(1) provides in part: "[W]hen an act is required or allowed to be done at or within a specified period by these rules . . . the court for cause shown may at any time in its discretion . . on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect."

the movant was at fault, typically is the most important factor. *See U.S. v. Torres*, 372 F.3d 1159, 1163 (10th Cir. 2004) ("[F]ault in the delay remains a very important factor-perhaps the most important single factor-in determining whether neglect is excusable.") (internal quotations omitted).

    1.    <u>Weighing the Factors</u>

        a.    <u>Prejudice</u>. The first factor is the danger of prejudice to the non-moving party. Here, Montoya and the estate would be prejudiced if Armijo were allowed to amend her exemption schedule. Had she listed the claim in April, 2016, Montoya would have had a year to assert the claim or settle it.[9] By the time Armijo disclosed the claim to Montoya, the three-year statute had run. Although Montoya may have a "discovery rule" argument for extending the limitations period, *see Delgado v. Liberty Mut. Fire Ins. Co.*, 2016 WL 7448312 (D.N.M.), the delay nevertheless prejudiced him.

Armijo may argue that her delay caused no prejudice because the exemption for personal injury claims is $23,675, so Montoya is no worse off than had she disclosed and exempted the claim on the petition date. That may or may not be true; the Court has no way of knowing how much Montoya could have settled the claim for,[10] nor what kind of deal he and Armijo may have reached to share in any recovery. In any event, Montoya was never given an opportunity to determine if Dr. Fackrell's asserted lien was avoidable. The estate was forced to incur attorney fees to deal with the undisclosed claim. The case could have been fully administered much more

---

[9] The New Mexico statute of limitations for personal injury claims is three years. N.M.S.A. § 37-1-8.

[10] Using the personal injury rule of thumb "three times meds" for pain and suffering, the claim would be worth about $26,000.

-8-
Case 16-10951-t7    Doc 44    Filed 01/31/18    Entered 01/31/18 15:05:59 Page 8 of 11

quickly had timely disclosure been made. Armijo never gave Montoya a chance to represent the estate in this matter and maximize a recovery for creditors.

Further, failure to disclose claims causes problems for third parties such as Davis and State Farm. State Farm thought it was dealing with the claim's owner when it wrote checks for $14,250. As it turns out, Armijo did not own the claim and had no ability to settle it. The repercussions of that problem have yet to be explored. Third parties have a right to know who owns claims when they are being litigated or settled.

All things considered, the bankruptcy estate and others would have been better off had Armijo disclosed and exempted the claim on the petition date.

      b.    <u>Length of Delay</u>. The second factor is the length of the delay and its potential impact on judicial proceedings. This factor weighs against allowing Armijo to claim the exemption. As mentioned above, the one-year delay in disclosing the claim caused the statute of limitations to run. Given all of the notice Armijo had about the claim (detailed below), the delay was too long.

      c.    <u>Reason for Delay</u>. The third factor is the reason for the delay, including whether it was within the reasonable control of the movant. Here, the delay was not reasonable. Armijo was given extensive notice of the claim and her duty to disclose it, including:

- Dr. Fackrell's Automobile Accident Questionnaire;
- Dr. Fackrell's March 25, 2015, patient note discussing Armijo's monetary claim against Davis;
- Dr. Fackrell's 33-month course of treatment;
- Pre-bankruptcy meetings between Armijo and her bankruptcy counsel;[11]

---

[11] Debtors' bankruptcy counsel is considered by this Court and the local bar to be highly competent. As Montoya persuasively argued at trial, one issue every good consumer bankruptcy attorney reviews *ad nauseum* with his client is whether the client has any personal injury, employment, or other causes of action. The Court has every reason to believe that Armijo's counsel questioned her closely about any such claims.

- Schedule B(33);
- Montoya's questions at the § 341 meeting;
- Dr. Fackrell's request for payment on or about June 1, 2016; and
- State Farm's July 5, 2016 letter.

A reasonable person would have known she had a claim of some kind, and therefore a duty of disclosure. At the very least, Armijo should have told Montoya and her counsel about the car accident, even if she did not think she had a claim. Armijo's delay in disclosing the claim until after her settlement, and after case closure, was unreasonable.

    d. <u>Good Faith</u>. The fourth factor is whether the movant acted in good faith. Here, Armijo's intentions are difficult to judge. She seems honest, intelligent, and thoughtful. The Court is reluctant to conclude that she did not act in good faith. Nevertheless, the facts indicate that a reasonable person in her situation would have disclosed the claim or accident to Montoya and her bankruptcy counsel.[12] The Court will leave it at that.

    e. <u>Collection Risk</u>. In addition to the *Biodiversity* factors, the Court has some concern that the $8,000 paid by State Farm was not placed in an attorney trust account or the Court registry. If some or all of the money has been spent, there will be difficulties all around.

### III. CONCLUSION

The Court concludes that Debtors' failure to disclose the Davis claim was not the result of excusable neglect. Debtors therefore will not be allowed to amend their Schedule C. A separate order will be entered.

---

[12] It is commonly, almost universally, known that if someone's negligence causes injury to an innocent victim, the victim has a claim for damages beyond recovery of out-of-pocket expenses. The Court is reluctant to accept Armijo's contention that she was unaware of this.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: January 31, 2018

Copies to: counsel of record